# United States Court of Appeals

*for the*

# Fifth Circuit

---

Case No. 24-10860

JESSICA CLOUSE; LINDSAY HEYMAN; MEGHAN KLEIN;
SYDNEY SEVERSON; REBEKAH TATE; MARISSA JENNINGS;
LAUREN MOORE; LAURA KADE,

*Plaintiffs-Appellants,*

v.

SOUTHERN METHODIST UNIVERSITY,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS, DALLAS, IN CASE NO. 3:18-CV-141,
DAVID C. GODBEY, U.S. DISTRICT JUDGE

## BRIEF FOR PLAINTIFFS-APPELLANTS

HUNTER D.L. HADDOCK
THE ZALKIN LAW FIRM P.C.
10590 West Ocean Air Drive, Suite 125
San Diego, CA 92130
(858) 259-3011

SHEILA P. HADDOCK
THE ZALKIN LAW FIRM P.C.
111 Congress Avenue, Suite 500
Austin, TX 78701
(737) 301-5871

*Attorneys for Plaintiffs-Appellants*

(800) 4-APPEAL • (335187)

# <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

| <u>Plaintiffs-Appellants</u> | <u>Counsel for Plaintiffs-Appellants</u> |
|---|---|
| Jessica Clouse | Sheila P. Haddock |
| Lindsay Heyman | THE ZALKIN LAW FIRM |
| Meghan Klein | 111 Congress Avenue, Suite 500 |
| Sydney Severson | Austin, Texas 78701 |
| Rebekah Tate | |
| Marissa Jennings | |
| Laura Kade | Irwin M. Zalkin |
| Lauren Moore | Alexander S. Zalkin |
| | Elizabeth Cate |
| | Hunter D.L.Haddock |
| | THE ZALKIN LAW FIRM, P.C. |
| | 10590 W.Ocean Air Drive, Suite 125 |
| | San Diego, CA 92130 |
| | |
| | Mark Werbner |
| | WERBNER LAW |
| | 5600 West Lovers Lane, Suite 116-314 |
| | Dallas, Texas 75209 |

i

| **Defendant-Appellee** | **Counsel for Defendant-Appellee** |
|---|---|
| **Southern Methodist University** | Robin G. Shaughnessy<br>Jennifer M. McCoy<br>W. Scott Hastings<br>Aaron S. Nava<br>LOCKE LORD LLP<br>2200 Ross Avenue, Suite 2800<br>Dallas, Texas 75201 |
| | Kimberly Williams<br>O'Melveny & Myers LLP<br>2801 North Harwood Street, Suite 1600<br>Dallas, Texas 75201 |
| | J. David Lunningham<br>Ryan Q. Trammell<br>WATSON, CARAWAY, MIDKIFF & LUNNINGHAM LLP<br>306 West 7th Street, Suite 200<br>Fort Worth, Texas 76102 |

/s/ ***Sheila P. Haddock***

_____

Sheila P. Haddock
*Attorney for Plaintiffs-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

The Court should hear oral argument in this appeal at the same time it hears oral argument in the related appeal of the district court's grant of final summary judgment against Plaintiffs-Appellants. *See Clouse, et al v. Southern Methodist University*, Case No. 24-10461. As Plaintiffs-Appellants explained in their Statement Regarding Oral Argument in the related appeal, this case presents the Court with a matter of significant importance involving the summary dismissal of both Texas common law tort claims and federal discrimination claims. Plaintiffs-Appellants, eight former student athletes, maintain the district court both misinterpreted the state and federal standards of accrual and misapplied applicable tolling doctrines in dismissing their claims based on limitations. The record is voluminous and fact intensive. Plaintiffs-Appellants believe that oral argument would benefit the Court as it undertakes its de novo review of the summary judgment ruling and that oral argument will illuminate and clarify the reasons Plaintiffs-Appellants maintain that the district court abused its discretion in awarding costs to Defendant-Appellee Southern Methodist University.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ...............................iii

TABLE OF AUTHORITIES.................................................................vi

STATEMENT OF JURISDICTION....................................................1

STATEMENT OF THE ISSUES..........................................................2

STATEMENT OF THE CASE .............................................................3

SUMMARY OF ARGUMENT .............................................................6

STANDARD OF REVIEW...................................................................7

ARGUMENTS & AUTHORITIES .......................................................7

I.    The District Court Abused Its Discretion When It Granted SMU's Bill of Costs .................................................8

    A.    SMU was not a "prevailing party" eligible to recover costs at the time of its motion...........................9

    B.    The *Pacheco* factors weigh in favor of denying costs to SMU.................................................................10

    C.    The Rowers and SMU should bear their own costs .............................................................................12

II.    SMU Failed to Meet its Burden to Show the Amount and Necessity of Its Costs .................................................13

    A.    SMU may not recover incidental costs related to depositions.................................................................16

    B.    SMU may not recover costs for both printed transcripts and video depositions ...............................24

    C.    Videographer fees are not taxable under section 1920................................................................30

    D.    Synchronization costs are not taxable under
          section 1920 .................................................................. 31

III.   The Record, the District Court's Ruling and the
     Amount of the Award are Irreconcilable ............................. 32

CONCLUSION ....................................................................... 42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aircraft Holding Solutions, LLC v. Learjet, Inc.*,
   No. 3:18-cv-0823-D, 2022 WL 1505861 (N.D. Tex. May 11,
   2022) ...................................................................................... *passim*

*Baisden v. I'm Ready Prods., Inc.*,
   793 F. Supp. 2d 970 (S.D. Tex. 2011) .................................................. 15

*Beauty Mfg. Sols. Corp. v. Ashland, Inc.*,
   No. 3:10-CV-2638-G, 2012 WL 4341914 (N.D. Tex. Aug. 29,
   2012) .............................................................................................. 32

*Bucklew v. Charter Comms., LLC*,
   2021 WL 3621892 (M.D. Fla. July 16, 2021), *rec. adopted*,
   2021 WL 3617404 (M.D. Fla. Aug. 16, 2021)...................................... 23

*Charles v. Sanchez*,
   No. Ep-13-CV-00193-DG, 2015 WL 11439074
   (W.D. Tex. Oct. 7, 2015) ................................................................... 41

*Cinemark Holdings Inc. v. Factory Mutual Ins. Co.*,
   No. 4:21-CV-00011, 2024 WL 964723 (E.D. Tex. Mar. 6, 2024) ..... 25-26

*Coats v. Penrod Drilling Corp.*,
   5 F.3d 877 (5th Cir. 1993) .............................................................. 30-31

*Fogelman v. ARAMCO*,
   920 F.2d 278 (5th Cir. 1991) ................................................... 7, 15, 40

*Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*,
   No. 4:19-cv-00358, 2023 WL 2899050 (E.D. Tex. April 11,
   2023) .............................................................................................. 24

*Gonzales v. Pan American Laboratories, L.L.C.*,
   No. 3:14-cv-2787-L, 2018 WL 2321896 (N.D. Tex. May 4, 2018) ........ 40

*Hall v. State Farm Fire & Cas. Co.*,
   937 F.2d 210 (5th Cir. 1991) .............................................................. 8

*Harper v. Capital One, N.A.*,
No. 3-11-cv-03007-F, 2013 WL 12250911 (N.D. Tex. 2013) ............... 12

*Harris v. Dallas Cnty Hosp. Dist.*,
No. 3:14-cv-3663-D, 2016 WL 8674685 (N.D. Tex. Aug.5, 2016) .. 15, 31

*HEI Res. E. OMG Joint Venture v. S. Lavon Evans*,
No. 5:07-CV-62, 2010 WL 536997 (S.D. Tex. Feb. 10, 2010) .......... 28-29

*Holmes v. Cessna Aircraft Co.*,
11 F.3d 63 (5th Cir. 1994) .................................................................. 15

*I.F. v. Lewisville Indep. Sch. Dist.*,
No. 4:14-cv-359, 2017 WL 11630564 (E.D. Tex. May 3, 2017) ....... 11-12

*IEX Corp. v. Blue Pumpkin Software, Inc.*,
No. 4:01-CV-16, 2004 WL 5698342 (E.D. Tex. April 8, 2004) ............. 20

*Industrial Print Technologies, LLC v. Cenveo, Inc.*,
No. 3:15-cv-01195-M, 2020 WL 13443897 (N.D. Tex. Aug. 26,
2020) ................................................................................................... 25

*Johnson v. Big Lots Stores, Inc.*,
639 F. Supp. 2d 696 (E.D. La. 2009) ...................................................... 9

*Jordan Kahn Music Co. L.L.C v. Taglioli*,
No. 4:21-cv-00045, 2023 WL 2266123 (E.D. Tex. Feb.28, 2023) ......... 13

*Kirk v. Invesco, Ltd.*,
No. H-15-833, 2017 WL 1078763 (S.D. Tex. Mar.22, 2017) ............... 28

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
No. 2:12-cv-00800-WCB, 2015 WL 4776501 (E.D. Tex. Aug. 13,
2015) ............................................................................................... 24-25

*Leal v. Magic Touch Up, Inc.*,
No. 3:16-cv-00662, 2019 WL 162885 (N.D. Tex. Jan. 9, 2019) ...... 16, 25

*Maroney v. FedEx Corporate Servs. Inc.*,
No. 4:20-CV-690-SDJ, 2023 WL 6147145 .................................... 24, 28

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013) ............................................................................. 8

*Mota v. Univ. of Tex. Houston Health Sci. Ctr.*,
    261 F.3d 512 (5th Cir. 2001) ............................................................... 14

*Pacheco v. Mineta*,
    448 F.3d 783 (5th Cir. 2006) ......................................................... 8, 10

*Parrish v. Premier Directional Drilling, L.P.*,
    2019 WL 13080390 (W.D. Tex. Oct. 3, 2019), *rec. adopted*,
    2019 WL 13080579 (W.D. Tex. Oct. 29, 2019) ............................... 19, 31

*Salley v. E.I. DuPont de Nemours* & Co.,
    966 F.2d 1011 (5th Cir. 1992) ............................................................. 9

*Sandoz v. Cingular Wireless*, LLC,
    No. 07-1308, 2016 WL 1305921 (W.D. La. Mar.31, 2016) .................. 12

*Sheets v. Yamaha Motors Corp., U.S.A.*,
    891 F.2d 533 (5th Cir. 1990) ............................................................ 8-9

*Smith v. Chrysler Grp., L.L.C.*,
    909 F.3d 744 (5th Cir. 2018) ............................................................. 10

*Taniguchi v. Kan Pacific Saipan, Ltd.*,
    566 U.S. 560 (2012) ................................................................ 7, 14, 15

*United States ex rel. Gonzalez v. Fresnius Med. Care N. Am.*,
    761 F. Supp. 2d 442 (W.D. Tex. 2010), *aff'd sub nom.*
    *Gonzalez v. Fresnius Med. Care N. Am.*, 689 F.3d 470 (5th Cir.
    2012) ................................................................................................. 31

*United States ex rel King v. Solvay Pharmaceuticals, Inc.*,
    871 F.3d 318 (5th Cir. 2017) ............................................................. 14

*United States ex rel King v. Solvay S.A.*,
    No. H-06-2662, 2016 WL 3523873 (S.D. Tex. June 28, 2016) . 19, 20, 21

*U.S. ex rel. Long v. GSDMIdea City, L.L.C.*,
    807 F.3d 125 (5th Cir. 2015) ......................................................... 16-17

*United States v. D.K.G. Appaloosas, Inc.*,
    630 F. Supp. 1540 (E.D. Tex. 1986), *aff'd,*
    829 F.2d 532 (5th Cir. 1987) ............................................................. 12

*Vanderbilt Mortg. and Finance, Inc. v. Flores*,
No. C-09-312, 2011 WL 2160928 (S.D. Tex. May 27, 2011) ............... 25

*Vital v. Varco*,
No. H-12-1357, 2015 WL 7740417 (S.D. Tex. Nov. 30, 2015)............. 31

*Weathersby v. One Source Mfg. Technology, L.L.C.*,
No. A-08-CA-087-SS, 2009 WL 8747824 (W.D. Tex. April 2,
2009) ........................................................................................ 20

*West v. Nabors Drilling USA, Inc.*,
330 F.3d 379 (5th Cir. 2003) ............................................... 30

## Statutes and Other Authorities:

U.S. Const., art. III ................................................................ 1

20 U.S.C. § 1681 .................................................................... 1

28 U.S.C. § 1291 ................................................................ 1, 2

28 U.S.C. § 1331 .................................................................... 1

28 U.S.C. § 1343(a)(3)............................................................ 1

28 U.S.C. § 1343(a)(4)............................................................ 1

28 U.S.C. § 1367(a) ............................................................... 1

28 U.S.C. § 1920 ......................................................... *passim*

28 U.S.C. § 1920(2) .............................................................. 16

28 U.S.C. § 1920(4) ............................................. 32, 33, 39

Fed. R. App. P. 4(a)(7) .......................................................... 2

Fed. R. App. P. 4(a)(7)(A)(ii).............................................. 1-2

Fed. R. Civ. P. 12(b)(6) ......................................................... 4

Fed. R. Civ. P. 54 .................................................................. 7

Fed. R. Civ. P. 54(b)............................................................... 1

Fed. R. Civ. P. 54(d)........................................................................... *passim*

Fed. R. Civ. P. 54(d)(1) ........................................................... 6, 8, 12

10 C. Wright, A. Miller, & M. Kane, Federal Practice and
    Procedure § 2666 (3d ed 1998) ............................................... 14

10 C. Wright, A. Miller, & M. Kane, Federal Practice and
    Procedure § 2668 (3d ed 1998) ........................................ 10, 12

## Media Articles:

Adam Grosbard, *"Title IX lawsuit alleges that SMU provided
    inadequate medical treatment for women's rowing team,"*
    Dallas Morning News, Jan. 19, 2018 ...................................... 11

Ellen J. Staurowsky, Ed. D., *"SMU Coaches & Sports Medicine
    Personnel Accused by Female Rowers of Gender Discrimination
    and Negligence,"* Sports Litigation Alert, Mar. 2, 2018 ...................... 11

Jake Eichstaedt, *"Current, former rowers allege inadequate
    medical treatment in Title IX suit,"* The Daily Campus,
    January 19, 2018 .................................................................... 11

Lauren Rosh*, "Federal Court Grants, in Part, Motion to Exclude
    Expert Witnesses in Title IX Lawsuit Between SMU and
    Former Member of Women's Rowing Team,"* Sports Litigation
    Alert, Jul 12, 2024 ................................................................. 11

*"Lawsuit alleges inferior resources left SMU female rowers with
    hip injuries,"* ESPN.com, January 18, 2018 ......................... 11

*"SMU Rowers Lawsuit Challenges Inequitable Medical
    Treatment,"* TITLE IX BLOG, January 20, 2018 ................. 11

## **STATEMENT OF JURISDICTION**

This is an appeal from the award of costs by a district court following final judgment entered pursuant to Federal Rule of Civil Procedure 54(b). The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4) because the Plaintiffs-Appellants' claims arise under 20 U.S.C. §1681, et seq and its interpreting regulations. The district court had supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a) because the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the United States Constitution.

On April 29, 2024, the district court issued a Rule 54(b) Final Judgment as to eight of the nine plaintiffs, dismissing the claims of Jessica Clouse, Lindsay Heyman, Meghan Klein, Sydney Severson, Rebekah Tate, Marissa Jennings, Laura Moore and Laura Kade's claims with prejudice. ROA.5389-5390. Plaintiffs-Appellants timely filed their notice of appeal of the final judgment on May 20, 2024 and this Court has jurisdiction under 28 U.S.C. § 1291 and Federal Rule of Appellate

Procedure 4(a)(7)(A)(ii). ROA.5655-5656. Briefing is complete in Case. No. 24-10461.

On August 20, 2024, the district court entered a Memorandum Opinion and Order and entered a final bill of costs granting Defendant-Appellee SMU costs in the total amount of $184,033.11. ROA.5712, 5729, 5730. Plaintiffs-Appellants timely filed their notice of appeal of this Order on September 17, 2024. ROA.5851. This Court has jurisdiction of the appeal of this Order under 28 U.S.C. §1291 and Federal Rule of Appellate Procedure 4(a)(7).

## <u>STATEMENT OF THE ISSUES</u>

I.  Whether the district court erred when it awarded costs to the defendant in this multi-plaintiff case despite evidence that such an award was both impractical and inequitable.

II.  Whether the district court erred when it awarded deposition-related costs, including incidental costs for handling, processing and compliance fees, videographer fees and synchronization costs, even though the defendant failed to meet its burden to establish the costs were necessarily obtained for use in the case rather than a matter of convenience.

III.   Whether the district court erred when it awarded costs for non-itemized, lump-sum deposition costs for which defendant offered no support or explanation and failed to establish the amount and the necessity of the charges.

IV.   Whether the district court erred when it awarded costs for both printed deposition transcripts and video depositions for 30 witnesses where the defendant failed to demonstrate the costs of the video depositions were necessarily incurred in the case rather than merely for discovery or the convenience of counsel.

V.   Whether reversal is required when the district court fails to explain its reduction of an award of costs and the final amount taxed cannot be reconciled with the court's ruling on objections or the record.

## STATEMENT OF THE CASE

On January 19, 2018, nine former student athletes filed this lawsuit against Southern Methodist University ("SMU"), alleging both state and federal claims arising out of injuries they suffered as a result of their participation in the university's all-female rowing team. ROA.27-72.  SMU asserted the affirmative defense of limitations and moved to

3

dismiss eight of the nine rowers (collectively "the Rowers") claims under Federal Rule of Civil Procedure 12(b)(6), in part, as untimely. ROA.101-120. The district court declined to dismiss on the grounds of limitations. ROA.282-288.  On February 13, 2023, SMU filed its Motion for Partial Summary Judgment, asserting again that the Rowers' claims were barred by limitations. ROA.3074-3075. SMU did not assert limitations as a defense against the ninth rower, Kelly McGowan. On February 5, 2024, the district court granted in part and denied in part the motion, dismissing the Rowers' claims as untimely. ROA. 5319-5390. The district court granted the Rowers' request for entry of final judgment and the Rowers appealed. ROA.5389-5390.

On May 13, 2024, SMU submitted its Bill of Costs seeking a total of $221,383.53. ROA.5402.  SMU requested an award of $86,488.47 for "the transcription costs of all witnesses, including the costs of certain video recordings," and $134,895.06 for copies and exemplification of copies. ROA.5402-5663.  Because McGowan's claims remain live, SMU purported to seek 8/9 or 89 percent of the copy costs and some of the deposition costs it deemed applicable to all nine rowers. SMU sought 100

percent of the deposition costs related to the Rowers and to certain other witnesses. ROA.5404-5428.

The Rowers opposed and argued the district court should deny SMU's request in full; in the alternative, the Rowers lodged specific objections, maintaining that SMU failed to make the requisite showing to support recovery of certain of the costs. ROA.5666-5678. SMU filed a reply along with appendix consisting of an unsigned declaration by one of its counsel. ROA.5693-5709.

On August 20, 2024, the district court issued a memorandum opinion and order granting in part and denying in part SMU's motion for bill of costs and awarding SMU a total of $183,033.11 in costs. Without detail or itemization, the district court reduced SMU's costs by $29,460.41 for an award of $57,028.06 for "depositions and transcripts," and by $7,890.01 for an award of $127,005.05 for exemplification and copies. ROA.5712-5730.

Rower Kelly McGowan's claims remain. McGowan's case was set for trial December 2, 2024. ROA.5400. However, on the eve of trial, the district court vacated the trial setting, reversed its prior ruling and permitted SMU to file an untimely second motion for summary judgment.

ROA.6079. *McGowan v. Southern Methodist University*, No. 3:18-cv-00141-N, In the United States District Court for the Northern District of Texas, ECF 256.

A detailed factual background of this case is set forth at length in the Brief for Plaintiffs-Appellants in the related appeal, *Clouse, et al v. Southern Methodist University,* No. 24-10461, In the United States Court of Appeals for the Fifth Circuit.

## SUMMARY OF ARGUMENT

Federal Rule of Civil Procedure 54(d)(1) authorizes but does not require courts to award costs to prevailing parties. Rather, the rule gives the court discretion based on the circumstances each case presents and there are a wide range of reasons that may justify denial of a prevailing party's costs. Here, the district court erred when it failed to meaningfully consider the Rowers' request that it exercise that discretion and deny costs to SMU. Dismissing their request in a single final paragraph, the district court ignored the unique facts and posture of this case warranting denial.

The district court further erred when it overruled the Rowers' objections even though SMU wholly failed to meet its burden to establish

6

the amount and necessity of costs as required. SMU's fell far short of demonstrating the costs were necessarily obtained for use in the case and the district court repeatedly overlooked SMU's shortcomings. Compounding its error, while the district court did sustain some of the Rowers' objections, the reductions applied do not match the rulings. The district court's calculations cannot be reconciled with the record.

The district court's award of costs to SMU should be reversed.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(d) gives courts the discretion to award costs to prevailing parties. *Taniguchi v. Kan Pacific Saipan, Ltd.,* 566 U.S. 560, 565 (2012). This Court reviews an award under an abuse of discretion standard. *Fogelman v. ARAMCO,* 920 F.2d 278, 285 (5th Cir. 1991).

## ARGUMENTS & AUTHORITIES

Federal Rule of Civil Procedure 54(d) gives courts the discretion to award costs to prevailing parties. *Taniguchi v. Kan Pacific Saipan, Ltd.,* 566 U.S. 560, 565 (2012). Rule 54 provides in relevant part: "Unless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party."

7

FED. R. CIV. P. 54(d)(1). "[T]he word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013). Importantly, Rule 54(d)(1) "authorizes" but "does not require courts to award costs to prevailing parties." *Id.* at 387, n.9 (emphasis in original). Rather, the rule gives the court discretion based on the circumstances each case presents and there are a wide range of reasons that may justify denial of a prevailing party's costs. *See Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006)(providing a non-exhaustive list of five factors to be considered in determining whether to deny costs).

## I. The District Court Abused Its Discretion When It Granted SMU's Bill of Costs.

A trial judge has wide discretion with regard to costs in a case and may order parties to bear their own costs. *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 216 (5th Cir. 1991). Courts may deny costs in some cases, such as those where there are offsetting victories, where the losing party fought valiantly in a close case in the public interest, or where the prevailing party's litigation tactics were abusive or vexatious, and, in exceptional circumstances, costs may actually be assessed against the prevailing party as a sanction. *Sheets v. Yamaha Motors Corp., U.S.A.*,

891 F.2d 533, 539 (5th Cir. 1990)(addressing "hardball tactics" and taxing costs against prevailing party); *Salley v. E.I. DuPont de Nemours* & Co., 966 F.2d 1011, 1017 (5th Cir. 1992)(finding improper litigation conduct warrants a denial of costs to prevailing party); *Johnson v. Big Lots Stores, Inc.*, 639 F.Supp.2d 696 (E.D. La. 2009)(addressing the "equitable" taxation of costs where both parties enjoyed some substantive victories). Here, the award of costs to SMU was premature and inequitable.

### A. SMU was not a "prevailing party" eligible to recover costs at the time of its motion.

Though eight of nine Rowers' claims were dismissed on summary judgment based on limitations, one the Rowers' claims, McGowan, still stand. All eight of the dismissed plaintiffs are percipient witnesses expected to testify at trial in McGowan's case. The same is true of SMU's current and former employees as well as third-party witnesses. The evidence established through extensive discovery in this case is equally applicable to all nine plaintiffs. Indeed, to properly prosecute McGowan's claims – particularly the document intensive Title IX claim – the same extensive, costly discovery would have been required even if she were the only plaintiff. Taxing these costs before the ultimate resolution of McGowan's claims was premature.

9

## B. The *Pacheco* factors weigh in favor of denying costs to SMU.

While good faith on behalf of the Plaintiff "is alone insufficient to justify the denial of costs to the prevailing party," the court has discretion to deny costs when the "suit was brought in good faith *and* denial is based on at least one of the following factors: '(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.' " *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (quoting *Pacheco*, 448 F.3d at 794); *see also* 10 Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure § 2668, at 234 (4th ed. 1998). Here, all but one of these factors – misconduct by the prevailing party – weigh in favor of denying costs.

The Rowers are young women who suffered significant physical harm as they sought higher education and prepared to launch their careers. SMU is a long-established private university with comparatively enormous financial resources. There is no dispute that the Rowers brought their claims in good faith in an effort to enforce their civil rights and recover damages caused by SMU's negligence. The Rowers' claims

10

were not frivolous. Rather, this case presents close and difficult legal issues. Title IX is a complex and evolving area of law and by bringing this suit, The Rowers conferred a substantial benefit to the public. This case garnered wide attention and continues to be covered by local and national media.[1] The case was highlighted by legal news outlets as well as sports risk management groups.[2] As a result of this case, SMU, and other schools, were pushed to reexamine their practices and the relationship between Title IX compliance and student athlete safety. *See I.F. v. Lewisville*

---

[1] *See e.g.,* Jake Eichstaedt, "*Current, former rowers allege inadequate medical treatment in Title IX suit,*" The Daily Campus, January 19, 2018, https://smudailycampus.com/1045753/sports/current-former-rowers-allege-inadequate-medical-treatment-in-title-ix-suit/;
Adam Grosbard, "*Title IX lawsuit alleges that SMU provided inadequate medical treatment for women's rowing team,*" Dallas Morning News, Jan. 19, 2018, https://www.dallasnews.com/sports/smu-mustangs/2018/01/19/    title-ix-lawsuit-alleges-that-smu-provided-inadequate-medical-treatment-for-womens-rowing-team/;"*Lawsuit alleges inferior resources left SMU female rowers with hip injuries,*" EPSN.com,         January         18,         2018,         https://www.espn.com/college-sports/story/_/id/22155224/female-rowers-sue-smu-alleging-gender-discrimination.

[2] *See e.g.,* Ellen J. Staurowsky, Ed. D., "*SMU Coaches & Sports Medicine Personnel Accused by Female Rowers of Gender Discrimination and Negligence,*" Sports Litigation Alert, Mar. 2, 2018, https://sportslitigationalert.com/smu-coaches-sports-medicine-personnel-accused-by-female-rowers-of-gender-discrimination-and-negligence/;"*SMU Rowers Lawsuit Challenges Inequitable Medical Treatment,*" TITLE IX BLOG, January 20, 2018, https://title-ix.blogspot.com/2018/01/smu-rowers-lawsuit-challenges.html;
Lauren Rosh, *"Federal Court Grants, in Part, Motion to Exclude Expert Witnesses in Title IX Lawsuit Between SMU and Former Member of Women's Rowing Team,"* Sports Litigation Alert, Jul 12, 2024, https://sportslitigationalert.com/ federal-court-grants- in- part- motion-to-exclude-expert-witnesses- in-title-ix-lawsuit-between-smu-and-former -member-of-womens-rowing-team/.

*Indep. Sch. Dist.,* No. 4:14-cv-359, 2017 WL 11630564 (E.D. Tex. May 3, 2017)(denying award of costs, reasoning that "because [the plaintiff] pursued this lawsuit, [the defendant school district] will be more cognizant of its duties under Title IX and other antidiscrimination statutes"); *Harper v. Capital One, N.A.*, No. 3-11-cv-03007-F, 2013 WL 12250911 (N.D. Tex. 2013)(denying an award of costs due to good faith and defendants' extensive monetary resources); *Sandoz v. Cingular Wireless*, LLC, No.07-1308, 2016 WL 1305921 (W.D. La. Mar.31, 2016)(declining to tax costs against plaintiffs whose claims were barred by limitations).

### C. The Rowers and SMU should bear their own costs.

In exercising discretion pursuant to Rule 54(d), the court may pursue a case-by-case approach and base its decision on the circumstances presented. 10 C. Wright, A. Miller, & M.Kane, Federal Practice and Procedure §2668 (3d ed 1998). *See also United States v. D.K.G. Appaloosas, Inc.*, 630 F.Supp.1540, 1573 (E.D. Tex. 1986)(recognizing that Rule 54(d)(1) "calls for a balancing of the equities on a case-by-case basis"), *aff'd,* 829 F.2d 532 (5th Cir. 1987). When a case involves multiple parties – plaintiffs or defendants – determining costs

12

can become complicated, especially when there are mixed results. "A simpler option is for the parties to bear their own respective costs, and that is the better option where…it is impossible to disentangle and allocate the costs expended by either side as between the prevailing and non-prevailing parties." *Jordan Kahn Music Co. L.L.C v. Taglioli*, No.4:21-cv-00045, 2023 WL 2266123, *10 (E.D. Tex. Feb.28, 2023). This option should apply here.

Discovery in this case was conducted on behalf of all nine plaintiffs. All the evidence in this case – the documents, the witness testimony, the expert reports  – is as relevant to one as it is to all. The same taxable costs would have been incurred whether the case involved one plaintiff or nine. The Rowers are percipient witnesses expected to testify at the trial of McGowan's claim.  The district court's award to SMU of costs it would  have incurred even if McGowan had been the only plaintiff is both impractical and inequitable. The Rowers and SMU should bear their own costs at this stage of the litigation.

## II.    SMU Failed to Meet its Burden to Show the Amount and Necessity of Its Costs.

"Although 'costs' has an everyday meaning synonymous with 'expenses,' the concept of taxable costs under Rule 54(d) is more limited

and represents those expenses …that a court will assess against a litigant." *Taniguchi,* 566 U.S. at 573 (quoting 10 C. Wright, A. Miller, & M.Kane, Federal Practice and Procedure §2666 (3d ed 1998)). The costs that may be awarded to prevailing parties in federal court are set forth in 28 U.S.C §1920 and, as noted by this Court, "federal courts may *only* award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529-30 (5th Cir. 2001)(emphasis added). The Supreme Court has underscored the "narrow scope of taxable costs" and emphasized that "taxable costs are limited to relatively minor, incidental expenses…." *Taniguchi,* 566 U.S. at 573. *See also*, *United States ex rel King v. Solvay Pharmaceuticals, Inc.*, 871 F.3d 318, 334-335 (5th Cir. 2017)("Taxable costs are limited to relatively minor, incidental expenses," amounting to "a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators." ). The discretion afforded by Rule 54(d) is not "a power to evade the specific categories of costs set forth by Congress" but is rather "solely a power to *decline* to tax, as costs, the items enumerated in §1920." *Taniguchi,* 566 U.S. at 573-574. (emphasis added)(expressly rejecting the view that "Rule

14

54(d) is a separate source of power to tax costs expenses not enumerated in §1920"). In short, "taxable costs are limited by statute and modest in scope." *Id.*

The party seeking recovery of its costs bears the burden of proving the amount and necessity of its costs. *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994). If a party against whom costs are sought does not object, a presumption arises that the costs were necessarily incurred and will be taxed. *Harris v. Dallas Cnty Hosp. Dist.*, No. 3:14-cv-3663-D, 2016 WL 8674685, * 2 (N.D. Tex. Aug.5, 2016). However, an objection shifts the burden to require the party seeking costs to show that the costs were necessary. *Id.* "Once an objection has been raised, the party seeking costs bears the burden of verifying that the costs were necessarily incurred in the case rather than just spent in preparation and litigation of the case." *Baisden v. I'm Ready Prods., Inc.*, 793 F.Supp.2d 970, 973 (S.D. Tex. 2011)(citing *Fogelman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991). Here, the Rowers objected. Here, SMU failed to meet its burden and the district court abused its discretion in awarding costs.

## Fees for Printed or Electronically Recorded Transcripts

Section 1920(2) authorizes the recovery of costs "for printed or electronically recorded transcripts *necessarily obtained for use in the case*." 28. U.S.C. §1920(2)(emphasis added).  SMU seeks costs for much more than "transcripts" and fails to show that even the transcripts were necessary and not simply for convenience. As the district court recognized, the Rowers "objected to an award of 'incidental costs' related to depositions, lump sum costs, costs associated with remote depositions, costs of video depositions, videographer fees, and synchronization costs." ROA.5715-5716.

### A. SMU may not recover incidental costs related to depositions.

"It is generally recognized that the basic costs of an original deposition transcript and one copy are taxable against the non-prevailing party." *Leal v. Magic Touch Up, Inc.*, No. 3:16-cv-00662, 2019 WL 162885, at *2 (N.D. Tex. Jan. 9, 2019) (Ramirez, J.) (internal quotation marks omitted) (quotation omitted). But incidental costs—such as costs for disks, delivery charges, indexing, exhibits, and summaries, which primarily are made for the benefit of counsel—are not recoverable. *Id.* See also *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 133

(5th Cir. 2015) ("As with the cost of expediting transcripts of depositions, incidental costs like shipping, binding, and tabbing are generally not deny costs for "litigation packages," administrative costs and processing and compliance fees when the court is  unable to conclude that the costs were a "necessary component of the cost of obtaining any deposition transcript." *Aircraft Holding Solutions, LLC v. Learjet, Inc.*, No.3:18-cv-0823-D, 2022 WL 1505861 (N.D. Tex. May 11, 2022). Because the ultimate burden is on the prevailing party to show that its costs were necessarily obtained for use in the case, these costs are routinely denied when "the prevailing party fails to provide 'necessary detail' to make an award." *Id.* (collecting cases). Conclusory assertions are often deemed insufficient to establish necessity. *Id.* Conclusory assertions in its briefing are all SMU offered.

Here, the invoices SMU offered to support its requested transcript costs include prohibited  incidental costs. In addition, the invoices were vague and appear to reflect package pricing. *See e.g.,* "TRANSCRIPT – O&1-VID-VC-WI", "TRANSCRIPT – COPY-VC-VID-WI" ROA.5443-5444. "VID", "VC" and "WI" are not defined and associated the charge is a lump sum. The Rowers argued – and the district court agreed – it is

impossible to determine the actual costs of just the transcript. Despite acknowledging that incidental costs are not recoverable, district court overruled the Rowers' objections to processing, compliance and handling costs: "SMU is entitled to costs of deposition transcripts and *SMU explained that the processing, compliance, and handling costs were necessary to obtain the deposition transcripts, rather than the costs of "add-ons."* ROA.5717. (emphasis added). And, although the district court further acknowledged that SMU "failed to explain what the abbreviations included in the transcript line items at issue refer to, or that all costs encompassed by these invoice items were necessarily incurred for use in this case rather than for convenience," the court nevertheless largely overruled the Rowers' objections and arbitrarily reduced the package price by twenty five percent. ROA.5717. The district court abused its discretion.

SMU's "explanation" was nothing more than argument, consisting of a single unsupported assertion in its Reply to the Rowers' objections. ROA.5699. ("Indeed, SMU was required to incur these costs in order to conduct depositions and obtain transcripts for use in this case."). Notably, SMU's counsel did not attempt to justify these incidental costs

in her unsigned declaration; indeed, she did not even mention them. ROA.5689-5690. SMU similarly and completely failed to address the Rowers' objections to the vague package pricing. SMU could have requested itemized invoices or at least provided more information about each transcript and demonstrated that the amount was reasonable. SMU did not. A single statement in a brief does not support the district court's finding that these costs were necessary. *See Parrish v. Premier Directional Drilling, L.P.*, 2019 WL 13080390 *3 (W.D. Tex. Oct. 3, 2019), rec. adopted, 2019 WL 13080579 (W.D. Tex. Oct. 29, 2019)("Parrish has failed to meaningfully argue that such costs were necessarily obtained for use in the case.").

The district court relies on two cases to support a twenty-five percent reduction of costs labeled "TRANSCRIPT-COPY-VC-VID-WI" or "TRANSCRIPT-O&1-VID-VC-WI." ROA.5717. (citing *United States ex rel King v. Solvay S.A.*, No. H-06-2662, 2016 WL 3523873 (S.D. Tex. June 28, 2016) and *Aircraft Holding Solutions LLC, et al v. Learjet, Inc.*, No. 3:18-CV-0823-D, 2022 WL 1505861 *6 (N.D. Tex. May 11, 2022)). This reliance is misplaced. A closer look reveals that these cases actually support denial not merely reduction of the costs SMU requests.

19

First, in *King*, a court noted that the lack of an itemized invoice for a written deposition transcript does not preclude an award of cost *"when counsel declares under penalty of perjury that the costs are correct and necessarily incurred." King*, at *5 (emphasis added). Emphasizing that the determination of whether non-itemized costs should be allowed, the court pointed to two cases where courts denied non-itemized deposition-related costs in their entirety. *Id.* (citing *Weathersby v. One Source Mfg. Technology, L.L.C.*, No. A-08-CA-087-SS, 2009 WL 8747824, at *7 (W.D. Tex. April 2, 2009)(disallowing costs of deposition transcripts "entirely as excessive and unreasonable and for the lack of an itemized receipt or invoice") and *IEX Corp. v. Blue Pumpkin Software, Inc.*, No. 4:01-CV-16, 2004 WL 5698342, at *2 (E.D. Tex. April 8, 2004)("Because the court is unable to determine the amount attributable to necessary costs, the total costs of these depositions is disallowed.")). Importantly, while the *King* court did find that "a reasonable solution for the prevailing party's failure to provide itemized invoices is to reduce the costs awarded for the non-itemized invoices for written deposition transcripts by twenty-five percent," it reached this conclusion only after careful analysis. Comparing the few non-itemized invoices the defendant submitted with

others that were itemized, the court reasoned that a twenty-five percent reduction was "appropriate in light of the amount of ancillary costs in the itemized invoices." *Id.*

This case presents very different circumstances. Here, SMU's counsel did not "declare under penalty of perjury that the costs are correct and were necessarily incurred" as the cases acknowledge is required. Indeed, the unsigned declaration submitted in support of SMU's Bill of Costs is void of any mention of the incidental costs or the non-itemized package pricing reflected in the deposition invoices. ROA.5689-5690.  And here, unlike the *King* court, the district court did not evaluate any evidentiary support or compare the non-itemized transcript costs with any itemized transcript costs before applying a twenty five percent reduction. The district court did not, as it is required to do, adequately explain its award.

Next, *Aircraft Holding Solutions LLC, et al v. Learjet, Inc.* does not provide support for a percentage reduction of the lump sum costs as the district court posits. No. 3:18-CV-0823-D, 2022 WL 1505861 *6  (N.D. Tex. May 11, 2022). According to the district court, the *Aircraft Holding Solutions* court "reduc[ed] taxable costs by half upon a finding that [the]

21

defendant was 'unable to identity what the charges labeled "TRANSCRIPT-COPY-VC-VID-WI' are for and therefore ha[d] failed to meet its burden to show the necessity and the amount of its costs." ROA.5718. The district court conflates two separate issues confronting the court in that case and misreads the opinion. The court *did* find that the defendant failed to meet its burden its burden to establish its taxable costs and the court *did* reduce some taxable costs by half. But the court *did not,* as the district court implies, excuse the defendant's failure to identify the specific charges or establish the necessity of the costs by merely reducing the costs by half. One had nothing to do with the other.

In *Aircraft Holding Solutions*, only one of three defendants moved for costs. The court found that the moving defendant failed to meet its burden to show the amount of costs it incurred, explaining: "The record lacks sufficient evidence to enable the court to determine how much [the moving defendant] itself – not its counsel or its co-defendants – spent on the deposition costs invoiced to their counsel." *Id*. at *5. Accordingly, the court "decide[d] in its discretion to reduce [the moving defendant's] costs *pro-rata* by the number of defendants represented in this case by joint counsel when each deposition was taken." *Id.*

The district court implies that the *Aircraft Holding Solutions* court reduced rather than disallowed the costs related to unidentified charges labeled "TRANSCRIPT-COPY-VC-VID-WI." ROA.5717. As a closer read of the opinion reveals, the district court is again incorrect.

> [The moving defendant], conceding there may be videoconference fees in the "TRANSCRIPT-COPY-VC-VID-WI" itemization, is unable to identify what the charges labeled "TRANSCRIPT-COPY-VC-VID-WI" are for, and therefore has failed to meet its burden to show the necessity and amount of its costs....Because [the plaintiff] appears to acknowledge that only $597.50 of this item is objectionable, the court disallows $298.75 of these taxable costs (one-half of the amount at issue.)

*Id*. at *8.[3] The court *disallowed* the moving defendant's pro rata share of the total objected-to costs. The court did not, as the district court did here, *reduce* the costs by a percentage amount to account for the defendant's failure to meet its burden to show the necessity and the amount of its costs. Rather, as the court repeatedly explained, it "divided all of the

---

[3] Courts have concluded that § 1920 does not authorize fees for costs of remote platforms used to conduct depositions. *See, e.g., Id. at *8* ( "[I]t is difficult to see where such costs would fit within § 1920 considering that they are fees incurred for a remote platform to conduct a deposition, not fees for an electronically recorded transcript or printed transcript.")*; Bucklew v. Charter Comms., LLC*, 2021 WL 3621892, at *3 (M.D. Fla. July 16, 2021) ("Section 1920 does not specifically allow for recovery of remote video platform fees...."), *rec. adopted*, 2021 WL 3617404 (M.D. Fla. Aug. 16, 2021). The district court correctly sustained the Rowers' objection to remote video costs but it is not clear that the court disallowed these costs.

disallowed costs by the number of codefendants at the time of the respective deposition." *Id*. at *9, n.22.

### B. SMU may not recover costs for both printed transcripts and video depositions.

Courts within this Circuit are split on whether Section 1920 permits the recovery of costs for preparing *both* a printed deposition transcript and a videotaped deposition for the same witness. *See Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.,* No.4:19-cv-00358, 2023 WL 2899050, *4-5 (E.D. Tex. April 11, 2023) (collecting cases). At the outset, the text of Section 1920(2) suggests that a prevailing party can only recover fees for printed or electronically recording transcripts, but not both. *See Maroney v. FedEx Corporate Servs. Inc.*, No. 4:20-CV-690-SDJ, 2023 WL 6147145, * (E.D. Tex. Sept. 20, 2023). But even if a party can be awarded costs for both, it must adequately explain its need for both. *Id*. Otherwise, a prevailing party may be awarded extra fees for duplicative information. *Id.* Ultimately, to recover the costs of *both* printed depositions transcripts and video depositions, the prevailing party must "show that the video was necessarily obtained for use in the case." *Kroy IP Holdings, LLC v. Safeway, Inc.*, No. 2:12-cv-00800-WCB, 2015 WL 4776501, at *5 (E.D.

Tex. Aug. 13, 2015). That is, "absent a showing that both an ordinary transcript and a videotape of a depositions were necessary, [a party] may not recover." *Leal v. Magic Touch Up, Inc.*, at *4.

"The mere recitation with talismanic regularity of the phrase 'necessarily obtained for use in the case' is not sufficient. Some further showing is necessary." *Vanderbilt Mortg. and Finance, Inc. v. Flores*, No. C-09-312, 2011 WL 2160928, at *10 (S.D. Tex. May 27, 2011). Here, SMU made no such showing. Indeed, the only support SMU offered for the video costs appeared in its Memorandum in Support of Bill of Costs where it argued that "it was reasonably expected that certain witnesses may not be available." ROA.5411. However, "[a] party's general speculation as to the inability of the witnesses to attend trial does not suffice as a basis to award costs." *Industrial Print Technologies, LLC v. Cenveo, Inc.*, No. 3:15-cv-01195-M, 2020 WL 13443897 * 3 (N.D. Tex. Aug. 26, 2020)(sustaining objection to costs for video depositions, finding that "counsel's bare assertion fails to establish that that any one – much less all – of the 41 video depositions at issue could reasonably be expected to be used during trial or for trial preparation." ). *See also Cinemark Holdings Inc. v. Factory Mutual Ins. Co.*, No. 4:21-CV-00011, 2024 WL

964723 (E.D. Tex. Mar.6, 2024)("Because Factory Mutual will recover costs for paper transcripts of these depositions and does not provide evidence for why both video and paper are necessary, the Court finds Factory Mutual cannot recover its costs for video depositions of Cinemark's witnesses.")

Here, SMU sought  recovery of transcription costs related to the depositions of 45 witnesses, including "the costs of certain video recordings that it purchased before obtaining summary judgment against the Dismissed Plaintiffs." ROA.5411. According to its Reply, SMU seeks "costs associated with the video recording of the depositions of 26 witnesses – all of whom are or were outside of subpoena range at the time of their deposition, were expected to be outside of subpoena range at the time of trial, and/or not within the control of SMU." ROA.5701. SMU did not identify the 26 witnesses but directed the district court to "n. 3, *supra,*" which in turn referenced the Declaration of SMU's counsel, Robin Shaughnessy. ROA.5698, 5701. However, Shaughnessy's unsigned declaration does not mention witnesses, the anticipated unavailability of witnesses, the necessity or even the expected value of obtaining video testimony. ROA.5689-5690.  Indeed, the declaration contains only a

single conclusory statement even arguably related to the necessity of depositions in general: "Each deposition for which SMU seeks reimbursement of costs through its Bill of Costs was and/or was intended for use in motion practice and/or trial in this case." ROA.5689. Moreover, SMU's assertion in its Reply that it only seeks video costs related to 26 witnesses conflicts with its brief in support of its bill of costs and the appendix filed in support. SMU summarized and submitted invoices reflecting video deposition costs for 30 witnesses. ROA.5412-5429, 5432-5507. The list includes all eight Rowers, their parents, fact witnesses represented by SMU's counsel and two of SMU's own expert witnesses.

Whether it seeks costs for the video depositions of 26 witnesses or 30 witnesses, SMU wholly failed to meet its burden. The record simply does not support the district court's finding that "SMU has demonstrated that the video depositions were necessarily obtained for use in this case." ROA.5721. SMU offered no evidence to support its need for both ordinary transcripts *and* videotaped depositions. SMU sole argument that "it was reasonably expected that certain witnesses may not be available or otherwise subject to the Court's subpoena power at the time of trial" rings hollow. ROA.5411. SMU could not reasonably expect that the Rowers

would not be available for trial. SMU could not reasonably expect that the Rowers' experts would not be available for trial. SMU could not reasonably expect the court to believe that it would present its own experts at trial by deposition. In short, SMU offered no evidence at all to justify imposing an additional tens of thousands of dollars in video deposition costs on the Rowers and the district court abused its discretion when it concluded otherwise. *See Maroney v. FedEx Corporate Servs. Inc.*, No. 4:20-CV-690-SDJ, 2023 WL 6147145 (E.D. Tex. Sept. 20, 2023)(denying costs and observing "the fact that a video copy of [the plaintiff's] deposition might enhance [the defendant's] trial presentation does not render the video 'necessary' for trial when the written transcript was already available."); *Kirk v. Invesco, Ltd.*, No. H-15-833, 2017 WL 1078763,*3 (S.D. Tex. Mar.22, 2017)(sustaining objection where defendant failed to "verify that the costs of the video depositions were necessarily incurred in the case rather than merely for discovery or the convenience of counsel.")

One of the reasons for requiring a party to demonstrate that obtaining a video deposition was a matter of necessity rather than one of convenience is to prevent overcompensation. *Id. See also, HEI Res. E.*

*OMG Joint Venture v. S. Lavon Evans*, No. 5:07-CV-62, 2010 WL 536997 (S.D. Tex. Feb. 10, 2010)("The undersigned will not allow [the defendant] to recover nearly double the costs for a deposition transcript merely for the convenience of having the deposition record in both written and electronic format.") Here, as the invoices SMU submitted for the Rowers reflect, the costs are *more* than double.

| WITNESS | PRINTED DEPOSITION | VIDEO DEPOSITION | TOTAL COSTS | RECORD CITE |
|---|---|---|---|---|
| | | | | |
| Jessica Clouse | $2,007.10 | $1,331.95 | $3,339.05 | ROA.5432 ROA.5433 |
| Laura Kade | $1,845.60 | $2,376.95 | $4,222.55 | ROA.5436 ROA.5437 |
| Lindsay Heyman | $2,417.78 | $2,700.00 | $5,117.78 | ROA.5444 ROA.5447 |
| Marissa Jennings | $2,342.83 | $2,700.00 | $5,042.83 | ROA.5445 ROA.5446 |
| Rebekah Tate | $2,277.30 | $2,700.00 | $4,977.30 | ROA.5448 ROA.5499 |
| Sydney Severson | $2,357.40 | $2,405.00 | $4,762.40 | ROA.5449 ROA.5500 |
| Meghan Klein | $2,560.10 | $2,645.00 | $5,205.10 | ROA.5450 ROA.5451 |
| Lauren Moore | $2,383.85 | $1,840.00 | $4,223.85 | ROA.5455 ROA.5456 |
| | | | | |
| TOTAL COSTS | $18,191.96 | $18,698.90 | $36,890.86 | |

The district court abused its discretion when it awarded SMU costs for both printed deposition transcripts and video depositions despite SMU's failure to establish that both were necessarily obtained to use in the case.

### C. Videographer fees are not taxable under section 1920.

In addition to the video recordings, SMU sought costs described as "Videographer Minimum," "Videographer Additional Hours," and "Videographer Additional Hours Overtime." The district court overruled the Rowers' objections to these costs, concluding that because it had "determined that the video depositions were necessarily obtained for use in this case, and videography was necessary to obtain a video deposition, it follows that the cost of videography were likewise necessarily incurred for use in case." ROA.5722. The district court denied only costs for "Videographer Additional Hours Overtime." The district court erred.

While the "electronically recorded transcript" of a video deposition may be recoverable if it is necessarily obtained for use in the case, this Court has expressly held that videographer fees are not recoverable as costs under Section 1920. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 396 (5th Cir. 2003); *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891

(5th Cir. 1993)(denying recovery of costs for "video technician fees incurred for video depositions"). *See also, Parrish v. Premier Directional Drilling, LP*, No. 5-16-cv-00417-DAE, 2019 WL 13080390 *3 (W.D. Tex. Oct. 3, 2019)(recognizing that while costs for a "videotape" in addition to a printed transcript may be taxable if reasonably obtained for use at trial, "videographer fees" are not recoverable as costs under §1920).

### D. Synchronization costs are not taxable under section 1920.

Finally, even when video depositions are necessarily obtained for use in a case, not all related costs are recoverable. For example, costs for synchronizing video depositions are not properly taxable as costs. *Harris v. Dallas County Hosp. Dist.*, No. 3:14-cv-3663-D, 2016 WL 8674685, *4 (N.D. Tex. Aug. 5, 2016). *See also, Vital v. Varco,* No. H-12-1357, 2015 WL 7740417, at *3 (S.D. Tex. Nov. 30, 2015)(recognizing that "costs for video synchronization…are not enumerated in § 1920); accord *United States ex rel. Gonzalez v. Fresnius Med. Care N. Am.*, 761 F. Supp. 2d 442, 40 (W.D. Tex. 2010), *aff'd sub nom. Gonzalez v. Fresnius Med. Care N. Am.*, 689 F.3d 470 (5th Cir. 2012) (finding that "video synchronization was a convenience to the parties and not a necessity").

Here, the district court overruled the Rowers' objection to

31

synchronization costs with barely a nod. The district court declined to follow the authorities the Rowers cited, including a reasoned opinion from a sister court in the Northern District of Texas. Instead, the district court was "persuaded" by three others. The cases the court cites trace back to single conclusory sentence in *Beauty Mfg. Sols. Corp. v. Ashland, Inc.*, No. 3:10-CV-2638-G, 2012 WL 4341914 (N.D. Tex. Aug. 29, 2012). With no citation and no analysis, the Beauty Mfg. Sols. Corp. court declared: "video synchronization [sic] charges are also allowable as necessary costs." *Id.* at *8. In adopting this unsupported statement, the district court ignores that "synchronization" is not included in Section 1920 and is widely considered to be for the convenience of the parties. And again, SMU made no attempt at all to explain why synchronization was necessary.

## III. The Record, the District Court's Ruling and the Amount of the Award are Irreconcilable.

In its Bill of Costs, SMU sought $134,895.06 for "exemplification and the costs of making copies." ROA.5420. Citing 28 U.S.C. § 1920(4), SMU contended that it is entitled to costs for "two categories of copying: (1) costs related to the scanning of documents that comprised the discovery record; and (2) costs related to making copies that were necessarily obtained for use in this case." ROA.5420. However, SMU

failed to show that the activities and costs related to electronic discovery constitute "copying" and, even if they did, SMU failed to show the copies were obtained for use within the meaning of Section 1920(4). The Rowers objected to these costs in their entirety.

**Electronic Discovery**
**App. 077-225**
**ROA.5508-5656**

SMU insisted that "electronic imaging of documents is the modern equivalent of making copies" and boasted that its use of an electronic database in this case "resulted in significant efficiencies and cost savings to the parties." ROA.5421. SMU describes its "E-discovery" costs as "the scanning, conversion, and loading of documents into its electronic data base" as well as "related costs that were necessary to load and review documents into its database and then produce such documents to Plaintiffs including the costs to retrieve and convert forensic information and text messages from witnesses' cell phones, the collection of witnesses' social media accounts, and the 'blurring' of photographs." ROA.5422. In response to the Rowers' objections, SMU filed a reply brief and in support relied on a sparse unsigned declaration by one of its attorneys. ROA.5689-5690.

The district court seemed to agree that SMU was overreaching, concluding that SMU could recover only for "the costs of scanning and conversion of documents [in TIFF or OCR format] for use in this case." ROA.5726. The court sustained the Rower's objections and explained:

> SMU does not request costs of maintaining the electronic database or storage. However, it does request costs for certain forensic data collection, extraction, blurring photos, and unspecified data processing costs of "native processing," "pre-process filtering" and "production processing."… *As noted above, the costs of collection or extraction of discoverable information are not taxable*. Moreover, the processing costs at issue are vaguely labeled with no explanation as what the differing processes entail or why they were necessarily used in this case. SMU argues that these costs are recoverable because electronic processing and storage was more efficient and less expensive than conducting discovery with physical documents over the course of this case. However, that electronic discovery was more convenient to counsel is not sufficient to warrant awarding costs under section 1920. *The Court sustains Plaintiffs' objections to SMU's processing costs. Accordingly, SMU may not recover the costs of blurring photos or any data collection, extraction, or processing.*

ROA.5726. (emphasis added). Ultimately, the district court purported to "award SMU **only the electronic discovery costs related to scanning of documents into electronic format to be used in the case and OCR and TIFF conversion costs** incurred to respond to [the

Rowers'] discovery requests." ROA.5726. The district court "**denie[d] all other costs**." ROA.5726.

However, despite significantly limiting the categories of recoverable costs, the district court nevertheless awarded SMU **$127,005.05** for exemplification and copies – almost the entirety of its request. ROA.5728. The court stated that it "reached this figure by ***deducting the costs the Court denied from SMU's requested costs***, and multiplying by 0.89…" ROA.5728. (emphasis added). The district court provided no detail and did not identify the costs deducted. The record, the court's ruling and the court's award are irreconcilable.

The district court expressly denied costs for "***forensic data collection, extraction, blurring photos, and unspecified data processing costs of*** "***native processing***," "***pre-process filtering***" and "***production processing***." ROA.5726. Yet, the district court summarily reduced SMU's request by a mere **$7,890.01.** ROA.5728. The district court left intact more than $140,000.00 in costs for the exact services it purportedly denied.

Highlighting in yellow the amounts for which it sought reimbursement, SMU submitted invoices from Ankura Consulting

Group, LLC. ROA.5508-5640. The highlighted invoice No.1000004675, based on which SMU requested reimbursement of $78,719.94, provides a glaring example of the district court's error. ROA.5509.

August

| | |
|---|---|
| Native Processing [Data Out] = 1 GB @ $175/GB | 175.00 |
| OCR – 55 Pages @$-.01/Page | 0.55 |
| Relativity Hosting Fees – 1.74 GB @ $15/GB | 26.09 |
| Relatively User Fees – 6 Users @$65/User | 390.00 |

September

| | |
|---|---|
| Pre-Process Filtering [Data In] – 1,022.36 GB @$65/GB | 66,453.40 |
| Native Processing [Data Out] – 45.59 GB @$156/GB | 7,978.35 |
| Endorsing – 1797 Pages @0.01/Page | 17.97 |
| OCR – 409,477 Pages @ 0.01/Page | 4,094.77 |
| Relativity Hosting Fees – 72.37 @ $15/GB | 1,085.51 |
| Relatively User Fees – 7 Users @ $65/User | 455.00 |

ROA.5509. (yellow highlight in original, underline added). Based on the "parameters" the district court itself set, costs in the amount of **$74,624.72** for "native processing," "pre-process filtering" and "endorsing" should have been deducted. That is, this one invoice alone warranted a deduction almost ten times greater than the *total* deduction of $7,890.01 the district court made.

Similarly, the district court expressly denied costs for blurring photos, data extraction and storage. And yet, the district court appears

to have ignored **$14,877.69** in costs for the very services it disallowed. ROA.5641-5656. SMU submitted six invoices ranging in amount from $668.00 to $6,637.00 for blurring photos, forensic data collection and cloud storage. ROA.5641-5656. Based on the district court's own ruling, none of these costs were recoverable and all should have been deducted. But they were not.

The district court was clear in its ruling that SMU may only cover costs of scanning, TIFF and OCR conversion. Therefore, rather than deduct the myriad other costs included on the invoices the court did not allow, a more efficient – and more accurate – approach would have been to identify the costs the court did intend to allow:

| VENDOR | COST TYPE | COST | RECORD CITE |
|---|---|---|---|
| Ankura Consulting Group, LLC | OCR OCR | .55 4,094.77 | App 078 ROA.5509 |
| Ankura Consulting Group, LLC | OCR | 24.49 | App 085 ROA.5516 |
| Ankura Consulting Group, LLC | OCR TIFF | 827.75 522.66 | App 092 ROA.5523 |
| Ankura Consulting Group, LLC | TIFF | 88.77 | App 097 ROA.5528 |
| Ankura Consulting | OCR | 21.42 | App 103 ROA.5534 |

| | | | |
|---|---|---|---|
| Group, LLC | | | |
| Ankura Consulting Group, LLC | OCR TIFF | 1,229.15 4.91 | App 108 ROA.5539 |
| Ankura Consulting Group, LLC | TIFF | 17.60 | App.120 ROA.5551 |
| Ankura Consulting Group, LLC | TIFF | 15.83 | App 127 ROA.5558 |
| Ankura Consulting Group, LLC | OCR TIFF | 1.34 43.96 | App 133 ROA.5564 |
| Ankura Consulting Group, LLC | OCR | .04 | App 145 ROA.5576 |
| Ankura Consulting Group, LLC | OCR | 3.35 | App 151 ROA.5582 |
| Ankura Consulting Group, LLC | OCR | 27.15 | App 170 ROA.5601 |
| Ankura Consulting Group, LLC | OCR | 21.29 | App 176 ROA.5607 |
| Ankura Consulting Group, LLC | OCR | 6.37 | App 182 ROA.5613 |
| Ankura Consulting Group, LLC | OCR TIFF | 18.62 449.88 | App 190 ROA.5621 |
| Ankura Consulting Group, LLC | OCR | .06 | App 197 ROA.5628 |
| Ankura Consulting Group, LLC | OCR | 38.95 | App 203 ROA.5634 |

| TOTAL TAXABLE COSTS | | $7,458.91 | |
|---|---|---|---|

### Lit Supp[4]
### *"B&W Scan, Renaming PDF's, Blowback w/clips,*
### *Load File Cust., Archival Storage, etc."*
### App. 226-229
### ROA.5657-5660

The Rowers objected that SMU offered no explanation for these costs. SMU made no effort to show how these costs are related to this case, much less demonstrate that the costs were necessarily incurred. The invoices, which do not even reflect the names of the parties, the case number or the attorneys of record, provided no clarification. In response to the Rowers' objections, SMU submitted the unsigned declaration of one of its counsel offering a single conclusory statement: "[T]he discovery related costs sought by SMU were incurred in connection with documents and information necessarily used to comply with Plaintiffs' discovery requests and/or for use in motion practice or the trial of this case." ROA.5689-5690. The district court reiterated that the "costs of scanning documents [and OCR conversion] are recoverable under section 1920(4),

---

[4] The Rowers can only speculate that "Lit Supp" is intended to be an abbreviation for Litigation Support.

but the costs of data extraction are not." ROA.5727. Therefore, at most, a

total of only $1,246.62 in "Lit Supp" costs should have been allowed:

| VENDOR | INVOICE | COST TYPE | COST | RECORD CITE |
|---|---|---|---|---|
| Platinum IDS, LLC | | B&W Scans | 379.26 | App 226 ROA.5657 |
| Platinum IDS, LLC | | B&W Scans<br>B&W Scans<br>OCR | 202.40<br>67.73<br>53.58 | App 227 ROA.5658 |
| Platinum IDS, LLC | | B&W Scans<br>OCR | 189.44<br>35.52 | App 228 ROA.5659 |
| Platinum IDS, LLC | | B&W Scans<br>Color Scans<br>OCR | 147.04<br>139.50<br>33.15 | App 229 ROA.5660 |
| TOTAL TAXABLE COSTS | | | $1,246.62 | |

**<u>Copies</u>**
***<u>"Certified Copies, Copies of Color Prints, Copy of DVD</u>"***
**App. 230-232**
**ROA.5661-5663**

Simply attaching an invoice does not satisfy the requesting party's

burden to demonstrate that the copies were "necessarily obtained for use

in litigation" and not "obtained simply for the convenience of counsel."

*Gonzales v. Pan American Laboratories, L.L.C.*, No.3:14-cv-2787-L, 2018

WL 2321896 (N.D. Tex. May 4, 2018)(quoting *Fogelman v. ARAMCO*, 920

F.2d 278, 286 (5th Cir. 1991). "The general rule is that duplicating

expenses are properly taxable to the extent the copies were used in support of a successful motion for summary judgment, as exhibits at trial, or were furnished to and used by the [c]ourt or opposing counsel." *Charles v. Sanchez*, No. Ep-13-CV-00193-DG, 2015 WL 11439074, at *13 (W.D. Tex. Oct. 7, 2015)(citing cases). The district court correctly sustained the Rowers' objections to costs for "Certified Copies," "Copies of Color Prints," and "Copy of DVD." However, because of the significant calculation errors, it is unclear whether these costs were deducted from SMU's request.

In sum, the district court's award of $134,895.05 simply cannot be reconciled with record. Even applying the parameters outlined in the memorandum and opinion, the numbers just do not add up. SMU failed to demonstrate the amount and the necessity of the costs sought and the district court failed to adequately explain its calculations. Reversal is required.

## **CONCLUSION**

For these reasons, this Court should reverse the district court's award of costs to SMU and remand with instructions to enter an order providing that the Rowers and SMU bear their own costs. In the alternative, the Rowers request the Court reverse the award of costs to SMU and remand for appropriate reduction.

Dated: January 6, 2025        Respectfully submitted,

By:   */s/ Sheila P. Haddock*
                     _____

                     SHEILA P. HADDOCK
                     THE ZALKIN LAW FIRM
                     111 Congress Avenue, Suite 500
                     Austin, Texas 78701
                     Tel:  737-301-5871
                     Fax:  858-2593015

                     *Attorneys for Appellants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2025, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. All counsel of record are registered CM/ECF users, and will be served by the appellate CM/ECF system.

*/s/ Sheila P. Haddock*

_____

SHEILA P. HADDOCK
THE ZALKIN LAW FIRM

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 7996 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

*/s/ Sheila P. Haddock*

_____

SHEILA P. HADDOCK
THE ZALKIN LAW FIRM
111 Congress Avenue, Suite 500
Austin, Texas 78701
Tel:    858-259-3011
Fax:    858-259-3015

*Attorneys for Appellants*